UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SETH T. CAREY, | ) | |
| | ) | Civil Action No. 1:25-cv-13076-IT |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **DEFENDANTS' MOTION TO DISMISS** |
| | ) | |
| ALIBABA GROUP HOLDING LIMITED, | ) | |
| ALIBABA.COM HONG KING LIMITED, | ) | |
| ALIBABA GROUP SERVICES LIMITED, | ) | |
| ALIBABA.COM U.S. E-COMMERCE | ) | |
| CORP., | ) | |
| ALIBABA.COM U.S., LLC, & | ) | |
| ALIBABA GROUP US INC. | ) | |
| | ) | |
| Defendants. | ) | |

**Table of Contents**

Introduction ................................................................................................................. 1

Background ................................................................................................................... 1

Argument ..................................................................................................................... 4

    I.    The complaint should be dismissed for lack of personal jurisdiction. .............................. 4

        A.   Legal standard. ................................................................................................ 4

        B.   Defendants are not subject to this Court's personal jurisdiction. ................................. 5

    II.   The complaint should be dismissed for failure of service. ............................................... 8

    III.   The complaint fails to join a necessary party. .................................................................. 9

    IV.   The complaint should be dismissed for failure to state a claim. .................................... 10

## Table of Authorities

**Cases**

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................................. 10, 11

*BNSF Ry. Co. v. Tyrell*, 581 U.S. 402 (2017) ............................................................................ 4

*Bryan R. v. Watchtower Bible and Tract Soc. Of New York, Inc.*, 1999 ME 144, 738 A.2d 839. 11

*Currie v. Indus. Sec. Inc.*, 2007 ME 12, 915 A.2d 400.................................................................. 11

*Curtis v. Porter*, 2001 ME 158, 784 A.2d 18 .......................................................................... 12, 13

*Davis v. RC & Sons Paving, Inc.*, 2011 ME 88, 26 A.3d 787 ...................................................... 12

*Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26 (1st Cir. 1994) ................................................. 5

*Hanson v. Denckla*, 357 U.S. 235 (1958) .................................................................................. 4, 7

*Harlow v. Children's Hosp.*, 432 F.3d 50 (1st Cir. 2005) .......................................................... 4, 5

*Kowalski v. Gagne*, 914 F.2d 299 (1st Cir. 1990)......................................................................... 2

*Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, 708 A.2d 283................. 12

*Raymond v. Lyden*, 1999 ME 59, 728 A.2d 124 .......................................................................... 12

*Rodi v. S. New Eng. Sch. Of Law*, 389 F.3d 5 (1st Cir. 2004) ..................................................... 10

*State v. Tucker*, 2015 ME 68, 117 A.3d 595................................................................................ 12

*Tucci v. City of Biddeford*, 2005 ME 7, 864 A.2d 185 ................................................................ 13

*United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp*, 960 F.2d 1080

 (1st Cir. 1992) ............................................................................................................................. 5

*Watterson v. Page*, 987 F.2d 1 (1st Cir. 1993) ............................................................................ 2

**Statutes**

5 M.R.S. § 213(1) .......................................................................................................................... 11

**Rules**

Fed. R. Civ. P. 12 .......................................................................................................... 1, 9

Fed. R. Civ. P. 19 ............................................................................................................. 9

Fed. R. Civ. P. 4(m) ...................................................................................................... 8, 9

Local Rule 4.1 .................................................................................................................. 8

M.R. Civ. P. 12(b)(6) ..................................................................................................... 10

**Introduction**

Defendants Alibaba Group Holding Limited, Alibaba.com Hong Kong Limited, Alibaba Group Services Limited, Alibaba.com U.S. E-Commerce Corp., Alibaba.Com U.S., LLC, and Alibaba.com US Inc. submit the following memorandum in support of their motion to dismiss (Doc. No. 20) this case pursuant to Rules 12(b)(2), (5), (6), and (7), and further state as follows.

**Background**

This matter is the latest is a series of actions that Seth Carey, a vexatious filer and suspended attorney in the State of Maine,[1] has brought against various entities related to the e-commerce marketplace Alibaba, concerning the purchase of two tea bagging machines from a third-party seller. His most recent action prior to this, filed in the Superior Court of Oxford County, Maine (Case No. OXFSC-CV-24-69) (the "Maine action"), raised the same claims, against a subset of the defendants here.[2] A copy of his complaint in the Maine action is submitted in support

---

[1] Carey has been suspended from the practice of law numerous times and remains suspended today. A copy of the Maine Supreme Judicial Court's Grievance Commission findings recommending denial of reinstatement as of March 2026 is docketed as Doc. No 20-6 (**Exhibit F**). *See also Board of Overseers of the Bar v. Carey*, 2019 ME 136, 215 A.3d 229 (affirming original suspension).   As noted in those findings, of which the Court may take judicial notice as a public document, *see Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990), Carey has been suspended for, among other things, "lack of competence," "lack of honesty and integrity in dealing with the court and opposing parties and counsel," "intemperate and abusive behavior," violations of IOLTA rules, "unlawful sexual touching and domestic assault," and "attempting to tamper with a witness." Doc. No. 20-6 at 1–4 and n.1. Part of Carey's discipline from 2018, which remains in place, is a restriction on court filings. The 2018 order found that he had a "pattern of vexatious litigation" and that as a result, he would be required to submit any future court filings for pre-screening. *See* **Exhibit G** (2018 disciplinary findings), Doc. No. 20-7 at 17–18.

[2] The Maine action only named Alibaba.com U.S. E-Commerce Corp., Alibaba.com U.S., LLC, and Alibaba Group U.S. Inc. Carey has added Alibaba.com Hong Kong Limited and Alibaba Group Services Limited (two Hong Kong entities) and Alibaba Group Holding Limited (a Cayman Islands corporation).

of this motion as Doc. No. 20-1 (**Exhibit A**). This Court may take judicial notice of the Maine complaint, as well as other documents from that case, as public records of a court. *See Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990). Much of Carey's complaint in this matter appears to be copied and pasted from the prior complaint. *Compare generally* Doc. No. 1 *with* Doc. No. 20-1. To summarize at a high level, in both actions, Carey alleges that he purchased two tea bagging machines on the Alibaba.com e-commerce platform, and the machines did not meet his expectations. *See generally*, Doc. No. 1; *see also generally* Doc. No. 20-1.

In the Maine action, Defendants moved to dismiss the complaint, both on the merits and because they were not subject to personal jurisdiction in Maine. A copy of Defendants' Motion to Dismiss in that matter is docketed as Doc. No. 20-2 (**Exhibit B**). A copy of Carey's response is docketed as Doc. No. 20-3 (**Exhibit C**), and a copy of Defendants' reply is docketed as Doc. No. 20-4 (**Exhibit D**). Of note, in conjunction with the motion to dismiss, Defendants filed a declaration from an officer of one of the Defendants, explaining that while Carey had alleged an "agreement," per the terms of the actual contract, any agreement Carey had was with "Alibaba.com Singapore E-Commerce Private Limited," a Singapore entity. *See* Doc No. 20-2 at 2 & Declaration of Kaixuan Gong (Gong. Dec.) filed in support of the same, and Exhibits A and B to Gong Dec. Consideration of these materials was proper in the Maine court (and is proper now) because Carey asserts a contract claim and the relevant contract is thus proper for consideration on a motion to dismiss. *See Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). The Gong Dec. also made clear that the relevant agreements included an assumption of risk as to the products bought or sold and a waiver of liability and warranties to the fullest extent permitted by law. *See* Doc No. 20-2 at 2-4 & Gong Dec. Exhibit A at 2 ¶ 4.3; Ex. B. at 2–3 ¶¶ 3.4, 7.1, and 7.2.

2

The Maine court granted the motion to dismiss. While the dismissal was on personal jurisdiction grounds, the analysis of the merits blended with the jurisdictional analysis to a high degree, because the defendants in the Maine action asserted that the Alibaba website functioned as a platform for transactions between buyers and third-party sellers, to which the Alibaba entities were not a party, and therefore, Carey's injuries did not arise out of any forum-based conduct by Alibaba. Indeed, they did not arise out of Alibaba's conduct at all. The Maine court agreed, finding that the Alibaba.com website was a platform/marketplace, and was not the seller, shipper, manufacturer, or deliverer of the products at issue, writing that:

> none of the Alibaba defendants have a physical or legal presence in Maine, nor are they involved in transactions between residents of Maine and sellers on Alibaba.com. The Alibaba defendants do not manufacture, sell, or deliver products displayed on the website Alibaba.com. Nor does Alibaba ship products to Maine or involve themselves in transactions with Maine citizens, as all sales, warranties, shipping, and distribution are handled by third party sellers.

*See* Doc. No. 20-5 (**Exhibit E**) (dismissal order from Maine court) at 4–5.

Carey did not appeal the decision of the Maine Court. Instead, he filed this action on October 22, 2025. Doc. No. 1. He requested *in forma pauperis* status, which was granted on February 27, 2026. Doc. No. 9. That same day, summonses issued for all Defendants. Doc. No. 11. No proofs of service were filed on the docket until June 15, 2026, when proofs of service for Alibaba.com U.S. E-Commerce Corp. and Alibaba Group US Inc. were filed, indicating service on June 12, 2026. Doc. No. 15, 16. On June 17, the docket was updated to reflect attempted service that failed as to Alibaba Group Services Limited. Doc. No. 18. The docket reflects neither service, nor attempts thereof, on the other Defendants.

Defendants now move to dismiss.

3

## Argument

This matter should be dismissed for three reasons. *First*, Defendants are not subject to personal jurisdiction in Massachusetts. *Second*, Carey has not properly served Defendants. *Third*, the complaint fails to state a claim on the merits. We discuss each issue in turn.

### I.   The complaint should be dismissed for lack of personal jurisdiction.

### A.  Legal standard.

To satisfy due process, a court must have either specific or general personal jurisdiction over a defendant. *Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005). General jurisdiction over a business entity only exists where its contacts with the forum state are so continuous and systemic as to render it "at home" there, with the paradigmatic examples being an entity's state of incorporation or principal place of business. *BNSF Ry. Co. v. Tyrell*, 581 U.S. 402, 413 (2017). While general jurisdiction is not *strictly* limited to an entity's state of incorporation or principal place of business, it requires that the entity's in-state must be "so substantial and of such a nature as to render the corporation at home in that state." *Id*. at 413 n.19. The Supreme Court has described this as an "exceptional" circumstance. *Id*.

Specific personal jurisdiction, by contrast, exists when a defendant has sufficient minimum contacts with a forum *and* the cause of action arises directly out of, or is related to, the defendant's forum-based contacts. *Harlow*, 432 F.3d at 60–61. With respect to minimum contacts, these cannot be found solely based on the unilateral activity of the plaintiff, and "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). With respect to the arising out of or relating to standard, this requires a "material connection" and "the defendant's in-state conduct must form an important

4

or material element of proof in the plaintiff's case." *Harlow*, 432 F.3d at 61. Finally, the exercise of jurisdiction must be reasonable under the circumstances. This involves consideration of the so-called "gestalt" factors, these being: "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp*, 960 F.2d 1080, 1088 (1st Cir. 1992).

**B. Defendants are not subject to this Court's personal jurisdiction.**

Applying the above standards, Defendants are not subject to personal jurisdiction in Massachusetts. The complaint does not assert general jurisdiction, and it would not lie here in any event; the complaint does not allege that any of the Defendants are incorporated in or have a principal place of business in Massachusetts, nor does it allege the "continuous and systemic" contacts rendering this one of the exceptional cases where general personal jurisdiction exists over a non-resident business.

Nor does specific personal jurisdiction exist here. At the outset, Defendants note that several issues relevant to jurisdiction were already decided in the Maine court, and thus, issue preclusion bars relitigation of those issues. The doctrine of issue preclusion prevents relitigation of a factual issue in the following circumstances:

> (1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the judgment.

*Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 30 (1st Cir. 1994).

5

In the course of litigating his case in state court in Maine, Defendants and Carey actually litigated the issue of who was responsible for the shipping of the goods in question. As noted previously, the Maine court found that:

> none of the Alibaba defendants have a physical or legal presence in Maine, nor are they involved in transactions between residents of Maine and sellers on Alibaba.com. The Alibaba defendants do not manufacture, sell, or deliver products displayed on the website Alibaba.com. Nor does Alibaba ship products to Maine or involve themselves in transactions with Maine citizens, as all sales, warranties, shipping, and distribution are handled by third party sellers.

Doc. No. 20-5 at 4-5. Carey did not appeal the Maine court's decision, and it is a valid and binding final judgment. And these facts were necessary to the Maine court's decision; because it found that because Alibaba was merely a marketplace/platform, and the actual transactions were between Carey and third parties, it reasoned that Carey's injury did not arise from any Alibaba contact within the forum, and therefore, there was no personal jurisdiction.

Because these issues were litigated and decided in a valid and binding final judgment previously, Carey is precluded from re-litigating them and they form a necessary factual backdrop here. And these facts are no less fatal to jurisdiction in Massachusetts than they were in Maine. Because as a conclusively determined factual matter, third parties, not Alibaba entities, were the seller with whom Carey transacted, the transaction cannot form the basis for personal jurisdiction over Alibaba, regardless of Carey's new reliance on two transient visits to Massachusetts.

On its face, Carey's complaint does not demonstrate that defendants have the requisite minimum contacts, nor does it articulate how his alleged injury arises out of or relates to any contacts Defendants do have with the commonwealth. While Carey asserts that "Defendants conduct hundreds of billions of dollars of business per year spanning across all 50 states in the US, including Massachusetts," Doc. No. 1 ¶ 19, the actual connection *this transaction* has to

Massachusetts is virtually nonexistent. Carey is a resident of Maine. He does not contend that he purchased the machines online while in Massachusetts, and he admits that the intention of his purchase was for the machines to be delivered to him in Maine. *Id*. ¶ 39. His only statutory claim is a Maine cause of action (Count 5, Maine Unfair Trade Practices) and his common law claims are presumably brought under Maine law, as he is a Maine resident and does not invoke a different law or explain a basis for doing so. Carey does not allege that Defendants are incorporated in Massachusetts or have principal places of business there. The third-party sellers and shippers involved are not alleged to be from Massachusetts. The only connection to Massachusetts here seems to be that with regard to the 2019 purchase, a friend of Carey's allegedly picked up the machine from customs in New York, and met him in Massachusetts to hand it off. With regard to his 2021 purchase, again, the allegation is that a third-party shipper sent it to the wrong coast, and then sent it to Massachusetts, where Carey picked it up. *Id*. ¶ 127-129. These are exactly the type of unilateral contacts by third parties that the Supreme Court has made clear *cannot* support specific personal jurisdiction. *See Hanson*, *supra*. Carey's injury, such as it is, has nothing to do with Defendants' limited contacts with Massachusetts. His injury would be identical had the products been shipped directly to Maine. That he happened to choose Massachusetts as a convenient pick-up point does not create a basis for jurisdiction.[3]

In addition, the exercise of jurisdiction here would not be reasonable under the gestalt factors. Appearing in Massachusetts is equally burdensome to Defendants as Maine was, as they

---

[3] It is of no moment that Carey has added three additional entity Defendants since he filed the Maine action. The new Defendants are, respectively, two Hong Kong holding companies and a Cayman Islands company. The complaint does not articulate any basis to conclude that these entities have any contacts with Massachusetts, let alone that Carey's injury arises out of such contacts. Again, the only claimed relationship to Massachusetts here is that Carey visited the Commonwealth two times to pick up machines he had purchased from third party sellers.

7

are not citizens of either state. Moreover, Massachusetts has no interest in this dispute. It does not involve Massachusetts residents, does not concern Massachusetts law, and is seemingly only here because Carey is seeking a do-over in a court less familiar with his destructive litigation tactics. If Carey wanted to obtain "convenient and effective relief" he would have sued the actual sellers, not Defendants here, who are not parties to the transactions at issue. Similarly, the judicial system as a whole has no interest in Massachusetts exercising jurisdiction here, and the common interest of sovereigns similarly does not. Following his loss in Maine, Carey should have either (1) appealed if he disagreed with the decision; or (2) sought relief against the actual sellers of the allegedly faulty machines. He did neither. It does not advance the goals of the judicial system or the common interest of sovereigns to permit disappointed litigants to simply run to another state to re-litigate issues after a disappointing result.

## II.    The complaint should be dismissed for failure of service.

Under Fed. R. Civ. P. 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Under Local Rule 4.1, "any summons not returned with proof that it was served within 90 days of the filing of the complaint is deemed to be unserved for the purposes of Fed. R. Civ. P. 4(m).".

Only two Defendants—Alibaba.com U.S. E-Commerce Corp. and Alibaba Group US Inc.—have been served, according to the docket. Even granting Carey the benefit of running the 90-day period not from the filing of the complaint but rather, from the grant of *in forma pauperis status* and issuance of the summonses, we are now well outside the 90-day period for service.

Accordingly, per Rule 4(m) and Rule 12(b)(5), the complaint should be dismissed with respect to the non-served Defendants, at a minimum.[4]

### III.    The complaint fails to join a necessary party.

Beyond the other defects, Carey's complaint is also subject to dismissal under Rule 12(b)(7) for failure to join a necessary party under Rule 19. Rule 19 describes who must be joined as a party and states that:

> (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19.

Here, the issue of who sold the allegedly defective goods has already been litigated, and the court that decided that issue determined that "all sales, warranties, shipping, and distribution are handled by third party sellers." Doc. No. 20-5 at 5. Carey cannot escape the preclusive effect of that finding. It is hard to imagine a party more necessary to a defective product case than the party who manufactured, sold, or shipped the product. Carey has not joined that party in the case, and therefore, the matter should be dismissed under Rule 12(b)(7).

---

[4] Dismissal would also be justified as to the served Defendants, as service occurred outside the 90-day window. That being said, the served Defendants are cognizant that the Court can enlarge that time, and in light of the fact that there are other bases to dismiss as to all Defendants, the served Defendants only raise this point for preservation purposes.

**IV.    The complaint should be dismissed for failure to state a claim.**

Though the lack of personal jurisdiction and the failure to properly serve are sufficient bases in and of themselves to dismiss the action, even setting those issues aside, the complaint fails to state a claim. To survive a motion to dismiss, claims must be more than "conceivable;" they must be "plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 670 (2007). This requires more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The substance of Carey's complaint is identical to the complaint he filed in the Maine action. Defendants previously moved to dismiss that action pursuant to Maine's Rule 12(b)(6), which is substantially the same as its federal equivalent. Defendants thus incorporate by reference their previously filed motion to dismiss (and reply in support of the same) from the Maine case, Docketed as Doc. No. 20-2 and 20-4, as the arguments are identical. Defendants direct the Court to pages 7–17 of their original motion to dismiss and 2–7 of the reply. For ease of the Court's reference, Defendants also summarize the arguments below:

*Breach of Contract* (Count 1): Carey's contract claim fails because he does not name the proper entities (the seller, and to the extent relevant, Alibaba.com Singapore E-Commerce Private Limited), because the relevant contracts themselves do not "expressly state[]" or "implicitly impl[y]" that the goods "are guaranteed to work properly, with no hidden fees and charges," Doc. No. 1 ¶ 122, and in fact, the contracts disclaim liability. Moreover, the claim is time barred, at least with respect to the alleged sale in 2018 or 2019. *See* Doc. No. 20-2 at 7-8.

*Fraud and Misrepresentation* (Counts 2 and 3): Carey's fraud and misrepresentation claims fail because (1) the liability waivers bar them and (2) Carey did not plead fraud with the specificity demanded by Rule 9, which requires pleading the "who, what, where, and when" of the allegedly false statements. *Rodi v. S. New Eng. Sch. Of Law*, 389 F.3d 5, 15 (1st Cir. 2004). Carey's

suggestion that "it seems possible that no machines sold on Alibaba are operable" and "perhaps many customers have been defrauded in this regard" Doc. No. 1 ¶¶ 139, 140, are not particularized allegations, but naked speculation. Doc. No. 20-2 at 8–9.

*Tortious Interference With Prospective Economic Advantage* (Count 4): Carey's tortious interference claim does not allege the "fraud or intimidation" required for the claim. *See Currie v. Indus. Sec. Inc.*, 2007 ME 12, ¶ 31, 915 A.2d 400. Instead, in only makes the conclusory statement that Defendants' actions "were willful, oppressive, fraudulent and malicious." Doc. No. 1 ¶ 153. This is nothing more than the "formulaic recitation of the elements of a cause of action" that is, as a matter of law, insufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. *See* Doc. No. 20-2 at 10.

*Maine Unfair Trade Practices Act* (Count 5): Carey's MUTPA claim fails because he affirmatively admits that he purchased the machines to start a business selling tea. *See*, *e.g.*, Doc. No. 1 ¶¶ 30, 32, 116–117, 151–152. The MUTPA Act only applies to goods or services purchased for personal, family, or household purposes. 5 M.R.S. § 213(1). Accordingly, this claim fails as a matter of law. *See* Doc. No. 20-2 at 10.

*Breach of Fiduciary Duty* (Count 6): Defendants do not owe any fiduciary duty to Carey; all that is alleged is that he purchased products on a platform, and a fiduciary duty must be pled with specificity. *Bryan R. v. Watchtower Bible and Tract Soc. Of New York, Inc.*, 1999 ME 144, ¶ 21, 738 A.2d 839. *See* Doc. No. 20-2 at 11.

*Conspiracy* (Count 7): Carey's conspiracy claim fails because (1) none of the other allegations survive dismissal and absent an independent tort, there is no liability for civil conspiracy, *Potter, Prescott, Jamieson & Nelson, P.A. v. Campbell*, 1998 ME 70, ¶ 8, 708 A.2d

11

283, and because (2) the allegations are so conclusory that they do not survive *Twombly*. Doc. No. 20-2 at 11–12.

*Conversion* (Count 8): Carey claims that he purchased a product. If he was unsatisfied, his remedy is in contract, against the seller. Conversion, by contrast, deals with a situation where the aggrieved party has a present possessory interest in property wrongfully withheld. *State v. Tucker*, 2015 ME 68, ¶ 14, 117 A.3d 595 ("The key element to civil conversion is invasion of possession or the right to possession of the property at the time of conversion."). An unsatisfied customer does not, as a matter of law, have a conversion claim. Doc. No. 20-2 at 12.

*Negligence* (Count 9): Carey's negligence claim fails because (1) the only existing agreement between the parties disclaims liability for quality control issues, (2) defendants had no duty to Carey because they did not sell the products at issue to him, and (3) his claim fundamentally sounds in contract, not tort, as his grievance is dissatisfaction with goods purchased. *See Davis v. RC & Sons Paving, Inc.*, 2011 ME 88, ¶ 16, 26 A.3d 787. *See also* Doc. No. 20-2 at 13.

*Slander* (Count 10): Carey's slander claim fails as well. It is based on apparent statements by a prior attorney for Defendants, seemingly made in the context of bar discipline proceedings. Such proceedings are judicial in nature and thus, there is an absolute privilege under Maine law. *Raymond v. Lyden*, 1999 ME 59, ¶ 6 & n.7, 728 A.2d 124. *See* Doc. No. 20-2 at 13–14.

*Negligent Infliction of Emotional Distress and Intentional Infliction of Emotional Distress* (Counts 11 and 12): Carey's claims for negligent infliction of emotional distress and intentional infliction of emotional distress cannot survive a motion to dismiss. The former is only available where a bystander witnesses harm, or where the parties enjoy a special relationship such as between a patient and a therapist. *Curtis v. Porter*, 2001 ME 158, ¶ 19 & nn 16, 17, 784 A.2d 18. Intentional infliction of emotional distress only lies where the alleged conduct is "so extreme and

12

outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community." *Id*. ¶ 10. The complaint does not allege facts remotely meeting either standard. *See* Doc. No. 20-2 at 15.

*Consequential Damages, Punitive Damages, and Attorney's Fees* (Counts 13, 15, and 16): These claims do not survive a motion to dismiss. Consequential and punitive damages are not standalone claims for relief, but rather forms of damages available. So too with attorneys' fees; there is no standalone action for attorneys' fees but instead, they may be awarded by contract or statute. Carey does not allege any basis for these three claims to proceed as independent claims, and his other claims all fail for the reasons articulated. *See* Doc. No. 20-2 at 15–16.

*Unjust Enrichment* (Count 14): Carey does not even articulate the elements of unjust enrichment in Count 14, let alone allege facts showing (1) a benefit conferred on Defendants, (2) awareness of that benefit, and (3) inequitable retention of the benefit. *Tucci v. City of Biddeford*, 2005 ME 7, ¶ 14, 864 A.2d 185. This claim should be dismissed as well. *See* Doc. No. 20-2 at 16.

### Conclusion

For the foregoing reasons, Defendants request that the Court dismiss the complaint. Moreover, Defendants request that the dismissal be with prejudice; Carey has now filed the same action, multiple times, in multiple courts. It has not improved with age. In fact, it is but the latest in a years-long habit of vexatious litigation by Carey. This Court can, and should, put an end to it.

Dated:  June 23, 2026                              Respectfully submitted,

                                                   /s/ Eamonn R. C. Hart
                                                   Eamonn R. C. Hart (BBO# 696913)
                                                   ehart@brannlaw.com
                                                   Brann & Isaacson
                                                   113 Lisbon Street
                                                   P.O. Box 3070
                                                   Lewiston, ME 04243-3070
                                                   (207) 786-3566

                                                   *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I certify that on June 23, 2026, a copy of the foregoing was filed through the ECF system, which will send notice to all counsel and parties of record, and by emailing a copy of the same to Plaintiff Seth Carey at seth.carey@outlook.com.

Dated: June 23, 2026                                   /s/ Eamonn R. C. Hart
                                                       Eamonn R. C. Hart